**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | |
|---|---|
| **LAUREN B. LLOYD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NO. 3:12-cv-00566** |
| **v.** ) | |
| ) | |
| **MIDLAND FUNDING, LLC,** ) | |
| **MIDLAND CREDIT MANAGEMENT, INC.,** ) | |
| **AND ENCORE CAPITAL GROUP, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, MEMORANDUM OF LAW IN SUPPORT, AND SUPPLEMENTAL
MEMORANDUM IN SUPPORT**

COMES NOW the Plaintiff, Lauren B. Lloyd, by and through counsel and pursuant to

Fed. R. Civ. P. 56, and submits for the Court's consideration her response to the December 20,

2013 Motion for Summary Judgment, Memorandum of Law in Support, and affidavits and other

attachments filed by Defendants Midland Funding, LLC ("Midland Funding"), Midland Credit

Management, Inc. ("MCM"), and Encore Capital Group, Inc. ("Encore") in this matter. Plaintiff

also responds herein to the Supplemental Memorandum in Support of Defendants' Motion for

Summary Judgment and supplemental exhibits filed by Defendants on February 4, 2014.

Contemporaneous with this Response, Plaintiff is also filing her Declaration in opposition to

Defendants' Motion, as well as the full transcripts of the depositions of Plaintiff and Defendants'

30(b)(6) witness.

In opposition to the Motion for Summary Judgment and related filings, Plaintiff would

show the Court as follows:

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her Complaint (Doc. 1-1) in this matter, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and several state law causes of action as a result of Defendants' conduct which occurred after Defendants purchased a past-due credit card account with Citibank held in Plaintiff's name. See Answer (Doc. 2) ¶ 11.

Defendant Midland Funding, by and through its agent and attorney Finkelstein, Kern, Steinberg & Cunningham sued Plaintiff in Blount County General Sessions Court seeking $7,288.67 plus interest. Although Plaintiff agreed she was delinquent on the Citibank account, she disputed the amount that Midland Funding claimed it was owed. Lloyd Dep. 21-22. When Plaintiff asked for verification of the amount owed, she was offered a settlement. Lloyd Dep. 24-25. Ultimately, the parties reached an agreement, memorialized in writing, to settle the debt in full.  See Complaint (Doc. 1-1) Ex. A. Plaintiff agreed to settle because of the devastating impact a judgment would cause to her credit. Lloyd Decl. ¶ 6.

The amount of the settlement was $4,000. Lloyd Dep. 30; Compl. (Doc. 1-1) ¶ 12. After the parties reached a settlement, Plaintiff immediately tendered this amount to Defendants' attorneys. Lloyd Dep. 26. After the parties agreed to settle and Plaintiff had tendered the settlement funds to Defendants' counsel, Defendants breached the settlement agreement by unlawfully obtaining a default judgment against Plaintiff for the entire amount of the debt. See Complaint (Doc. 1-1) Ex. B. Defendants have admitted that they obtained this judgment against Plaintiff despite the settlement of the underlying debt. Mem. Supp. Defs.' Mot. Summ. J. (Doc. 9) at 4.[1]

---

[1] Under the doctrines of vicarious liability and respondeat superior, Defendants are fully responsible for acts committed by their agents. Abshure v. Methodist Healthcare-Memphis Hosps., 325 S.W.3d 98, 105-06 (Tenn.

2

The improper judgment, together with Defendants' continued verification of the judgment and debt to credit reporting agencies and failure to reasonably investigate and correct the inaccurate information, caused significant harm to Plaintiff. Specifically, Defendants' actions damaged Plaintiff's credit, hindered her ability to obtain a home loan, and caused her to expend substantial time, effort, and money in an attempt to correct the effects of the fraudulent judgment and improper reporting.

Because the judgment was not mailed or otherwise sent to Plaintiff, she was unaware of the judgment for many months. She did not learn of the judgment until more than one year after the judgment was entered, or October 2011 at the absolute earliest. Lloyd Dep. 55; Lloyd Decl. ¶ 12. After learning of the judgment, Plaintiff contacted Defendants numerous times in an effort to have her credit report corrected, but the Defendants continued to report the judgment on her credit.

When Plaintiff's attempts to have Defendants remove the fraudulent judgment failed, she filed an action in Blount County Circuit Court in late September 2012, within one year of the date she learned of the judgment.  On October 5, 2012 – two full years after the judgment was improperly taken against Plaintiff in violation of the parties settlement agreement – an order setting aside the judgment was entered in Blount County general sessions court.  Defendants then removed this action to this Court on November 1, 2012 (Doc. 1).

---

2010). Specifically under the FDCPA, Defendants, as debt collectors, are responsible for the actions of their attorneys and agents in obtaining the judgment against Plaintiff. See Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 405 (3d Cir. 2000) (explaining that allowing a claim of vicarious liability against a debt collector is "a fair result because an entity that is itself a 'debt collector'—and hence subject to the FDCPA— should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf"). If the Defendants were not debt collectors, the result might be different. See Wadlington v. Credit Acceptance Corp., 76 F.3d 103 (6th Cir. 1996) (refusing to allow suit on the basis of vicarious liability against client, who was not a debt collector, for violations of the FDCPA by the client's attorney).

3

On December 20, 2013, Defendants filed their Motion for Summary Judgment (Doc. 8) and accompanying Memorandum of Law (Doc. 9), arguing that Defendants Midland Credit Management, Inc. and Encore Capital Group, Inc. are entitled to summary judgment on all of Plaintiff's claims and that Defendant Midland Funding, LLC is entitled to summary judgment on Plaintiff's FCRA and state law claims. Defendant Midland Funding, LLC has not moved for summary judgment as to Plaintiff's FDCPA claim. On February 4, 2014, Defendants filed a Supplemental Memorandum and additional exhibits in support of their previously-filed Motion for Summary Judgment. Plaintiff now responds to the facts and legal grounds set forth in each of these filings.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, courts view all facts and evidence in the light most favorable to the nonmoving party. Hamilton Cnty. Emergency Commc'ns Dist. v. Bellsouth Telecomms., LLC, 890 F. Supp. 2d 862, 883 (E.D. Tenn. 2012) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In deciding a summary judgment motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000). The ultimate burden of persuasion on summary judgment is stringent: it remains at all times with the moving party. Watson v. Norris, 729 F. Supp. 581, 582-83 (M.D. Tenn. 1989). "If the moving party leaves any doubt as to the absence of a genuine issue then any doubt is resolved against the moving party." Id. at 582.

Evidence submitted to support or oppose a motion for summary judgment, which may include depositions, affidavits, exhibits, responses to interrogatories, admissions, and other factual materials, must be properly authenticated and must be admissible at trial, although such evidence need not be presented on summary judgment in a form which would be admissible at trial. See Alexander v. Caresource, 576 F.3d 551, 557-61 (6th Cir. 2009). "Rule 56(e)(2) [now Rule 56(c)(4)] leaves no doubt about the obligation … to make … a showing of facts that can be established by evidence that will be admissible at trial." Id. at 558. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ARGUMENT

I.      **The affidavits signed by John Moreno were not made upon his personal knowledge, and, to the extent such affidavits form the basis of Defendants' Motion for Summary Judgment, the Motion must be denied.**

In support of their Motion for Summary Judgment, Defendants rely upon three separate affidavits signed by John Moreno.  Mr. Moreno "work[s] closely with [Defendants'] corporate legal counsel." Moreno Dep. 17, lines 22-23. As Mr. Moreno explained, "[A]ny time they [the corporate lawyers] need an authorized representative I serve." Id. at 17, lines 23-24.

However, when Plaintiff deposed Mr. Moreno as Defendants' Fed. R. Civ. P. 30(b)(6) witness, Plaintiff learned that Mr. Moreno didn't have personal knowledge of any of the relevant matters averred in his affidavits. Rather, Mr. Moreno simply reiterated information allegedly derived from "account notes" in Defendants' electronic database and other documents selected and provided by corporate counsel, Moreno Dep. 36, 47, as well as information he allegedly

obtained from other individuals. Notably, Mr. Moreno did not create any of the entries in the database. Further, the account notes were not attached to his affidavit as business records.

Mr. Moreno was not personally aware that Midland Funding and Encore had no employees. Moreno Dep. 31-34, 56-58. Instead, he testified that this was something he had "been told" and was "common knowledge." See id. Mr. Moreno was unable to identify the person who told him that information. Id. at 57-58. Mr. Moreno did nothing to verify this fact before signing the affidavits. Id. at 58.

Mr. Moreno was not personally aware of the actions that Defendants (or their agents and attorneys, Finkelstein, Kern, Steinberg & Cunningham) had taken (or not taken) regarding Plaintiff's account. He gained his entire understanding of the history of Plaintiff's accounts from a review of account notes created and maintained by others. Moreno Dep. 46-47; see also Moreno Dep. 39 (admission by Mr. Moreno that he is not involved in the process of inputting information into Defendants' database after they purchase an account). Mr. Moreno has also not examined the contract between MCM and the Finkelstein firm. Moreno Dep. 42.

Mr. Moreno even lacked personal knowledge about whether or not he was an "authorized representative" as alleged in his affidavits.[2] He was simply told he was an authorized representative by his corporate counsel, Moreno Dep. 25-26, presumably when he was presented with the affidavits. Mr. Moreno declares that he has been an authorized representative "several times," but always in the context of litigation. Moreno Dep. 17-18.

To be sure, tendering Mr. Moreno as a 30(b)(6) witness does not relieve Defendants of the requirement that its witness have personal knowledge of all facts relied upon by Defendants in support of their summary judgment motion. See Century Pac., Inc. v. Hilton Hotels Corp., 528

---

[2] The extent to which Mr. Moreno was an "authorized representative" of each of the Defendants on December 20, 2013, as averred in his affidavits, is an issue separate and distinct from his designation as Defendants' 30(b)(6) witness on February 6, 2014. In fact, Plaintiff had not served a 30(b)(6) notice on Defendants as of December 20.

6

F. Supp. 2d 206, 215, n.5 (S.D.N.Y. 2007) ("Numerous courts have rejected hearsay evidence by a corporate deponent [in support of a motion for summary judgment] when there is no additional evidence to support the statements.") (citing Digene Corp. v. Ventana Med. Sys., Inc., 316 F. Supp. 2d 174, 181 n. 10 (D. Del. 2004) and Efferson v. Kaiser Aluminum & Chem. Corp., 816 F. Supp. 1103, 1116 n. 31 (E.D. La. 1993)).

> [T]he fact that a witness is a 30(b)(6) designee does not create a hearsay exception allowing him to simply repeat statements made by corporate officers and employees, if those statements are offered for their truth. [...] Rule 30(b)(6) does "permit designated persons without personal knowledge to testify on behalf of a corporation on matters within the corporation's knowledge;" further, a corporate designee may testify about not only a corporation's knowledge but also its subjective beliefs. These principles are designed to relieve burdens imposed on corporate defendants; however, they do not change the rule that a 30(b)(6) designee cannot "offer any testimony . . . at trial . . . to the extent that information was hearsay not falling within one of the authorized exceptions."

Cooley v. Lincoln Elec. Co., 693 F. Supp. 2d 767, 791 (N.D. Ohio 2010) (internal citations omitted). "[T]he rule that a 30(b)(6) designee cannot offer hearsay testimony holds especially true when there is no independent evidentiary basis that might otherwise prove the truth of the hearsay, such as corroborating testimony from the hearsay declarant." Id. at 792 (footnote omitted).

In sum, John Moreno clearly lacked personal knowledge of many of the factual statements made in his three affidavits in support of Defendants' Motion for Summary Judgment. When questioned on many of these same topics in his deposition, Mr. Moreno was unable to elaborate on topics such as Defendants' corporate structure, credit reporting procedures, and specific inquiries regarding Plaintiff's account. Further, Mr. Moreno attributed his knowledge in these areas to his discussions with corporate counsel and others. Under the current federal summary judgment standard, affidavits containing facts not based on personal knowledge are not appropriate support for a grant of summary judgment. See Fed. R. Civ. P. 56(c)(4).

## II. Defendants are not entitled to summary judgment on Plaintiff's FCRA claims.

### A. *Plaintiff may maintain a private right of action under 15 U.S.C. § 1681s-2(b).*

In support of their request for summary judgment on all FCRA claims alleged in the Complaint, Defendants first argue that there is no private right of action under 15 U.S.C. § 1681s-2(a). Defs.' Mem. Law at 6. While Plaintiff agrees that there is no private right of action for FCRA claims based on 15 U.S.C. § 1681s-2(a), Defendants' conduct violated both 15 U.S.C. § 1681s-2(a) and 15 U.S.C. § 1681s-2(b). See Compl. ¶¶ 66-72. Because Defendants are not entitled to summary judgment on Plaintiff's claims under 15 U.S.C. § 1681s-2(b), whether a private right of action exists under 15 U.S.C. § 1681s-2(a) is immaterial to whether Defendants can prevail on Plaintiff's FCRA claims on summary judgment.

### B. *Issues of material fact concerning the interconnected relationship among Defendants prohibit summary judgment in favor of Midland Funding and Encore.*

Defendants next argue that Midland Funding and Encore are entitled to summary judgment on Plaintiff's FCRA claims because, unlike MCM, they are not "furnishers of information as contemplated by § 1681s-2(b)" and did not receive a dispute notice directly from a credit reporting agency. Defs.' Mem. Law at 7. However, Defendants admit that MCM is a furnisher of information under the statute, see Defs.' Mem. Law at 9, and that MCM did receive an E-OSCAR credit dispute form directly from a credit reporting agency. Moreno Dep. 53.

Here, all three Defendants should properly be treated as furnishers of information and be deemed recipients of the E-OSCAR form which Defendants admit MCM received. Midland Funding and MCM are subsidiaries of Encore, Moreno Dep. 114, and all three entities work together as part of the same discounted debt purchasing and collection operation. MCM is the sole employer and directs the operations of Midland Funding. Moreno Dep. 50, 101, 113. When

Plaintiff mailed a certified letter to Midland Funding, MCM accepted the certified mail and signed the return receipt on behalf of Midland Funding. Moreno Dep. 60-62.

Defendants contend that Encore has no employees or operations and merely exists as a holding company, Moreno Dep. 56, 114, and that Midland Funding has no employees and operates solely as a passive purchaser of debt portfolios. Moreno Dep. 113-114. Apparently, the three companies commingle their employees, assets, and funds in such a way that Defendants may claim that MCM is the only entity engaged in any active business. However, according to the Tennessee Secretary of State's office, both MCM and Midland Funding are licensed debt collectors in this state. See Ex. A attached hereto. Any technical distinction between the entities is merely a sham designed to frustrate the efforts of FDCPA and FCRA plaintiffs. Accordingly, Midland Funding and Encore are not entitled to summary judgment on grounds that they are not furnishers of information or that they did not receive a credit dispute notice directly from a credit reporting agency.

### C. Issues of material fact concerning MCM's duty to address the judgment on Plaintiff's credit report and whether MCM reported the judgment to credit reporting agencies prohibit summary judgment in MCM's favor.

Next, Defendants argue that even MCM, as a furnisher of credit information that received an E-OSCAR credit dispute notice related to Plaintiff's account directly from a credit reporting agency, is entitled to summary judgment on Plaintiff's FCRA claim because MCM does not report judgments. However, Defendants' insistence that they did not report the judgment initially to any credit reporting agency ignores their obligations under the statute to act appropriately after receiving a notice of dispute.

After receiving notice from a credit reporting agency of a "dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting

agency," that "person" is obligated to perform an investigation and take a number of actions in response. 15 U.S.C. § 1681s-2(b). The statute does not indicate that the duties of the furnisher of information are abated when the furnisher did not actually report the particular inaccurate item which is the subject of the dispute. Defendants have offered no legal authority suggesting that their alleged policy of not reporting judgments permits them to avoid liability under 15 U.S.C. § 1681s-2(b). Defendants reported various information about Plaintiff's account over an extended period of time both before and after the judgment at issue. Under the plain language of the statute, whether Defendants actually reported the judgment itself does not impact Defendants' responsibilities under the FCRA as a furnisher of credit information with respect to Plaintiff's account.

Further, there is sufficient evidence in the record to create a disputed issue of material fact as to whether the Defendants did in fact report the judgment against Plaintiff to one or more credit reporting agencies. Defendants claim that a third-party provider reported the judgment, a public record, to the credit reporting agencies by retrieving records directly from the Blount County General Sessions Court. Moreno Dep. 89, 95-96. However, the item reported on Plaintiff's credit reports reflecting the judgment at issue is clearly inconsistent with the corresponding public record. While the judgment itself, Compl. (Doc. 1-1) Ex. B, was entered in the amount of $7,288.67, every instance of the judgment on Plaintiff's credit reports reflects an amount of $7,404 – an amount essentially identical to the $7,404.72 balance listed on the October 5, 2010 settlement letter to Plaintiff from Defendants' agent Finkelstein, Kern, Steinberg & Cunningham. The $7,404 figure does not appear anywhere on the judgment or elsewhere on the civil warrant. See Compl. (Doc. 1-1) Ex. B; see also Lloyd Decl. ¶ 14 & Exs. B, C, D.

Clearly, the reporting of the judgment was not limited to the public record itself and must have been connected to or supplemented by reporting of the $7,404 account balance (around the time of the entry of the judgment) by either Defendants or their agent Finkelstein, Kern, Steinberg & Cunningham. When confronted with this discrepancy in Defendants' explanation of the applicable judgment reporting procedures, Defendants' representative was unable to provide any explanation whatsoever for why the reported amount of the judgment matched the account balance rather than the judgment itself. Moreno Dep. 95, 98. This inconsistency in reporting, even by itself, is sufficient to counter Defendants' cursory assertion that they cannot be liable under the FCRA in this instance simply because they do not report judgments. Summary judgment is not appropriate on Plaintiff's FCRA claims.

### III.     Defendants are not entitled to summary judgment on Plaintiff's state law claims.

Next, Defendants assert that they are entitled to summary judgment on all of Plaintiff's state law causes of action, arguing (1) that all of Plaintiff's state law claims are preempted by the FCRA because they are based on allegations involving subject matter regulated by 15 U.S.C. § 1681s-2 and (2) that each state law claim is barred by the applicable statute of limitations. See Defs.' Mem. Law at 10-14. Defendants' position, however, neglects both the varying factual premises for each of Plaintiff's four distinct state law causes of action, as well as the differences in their applicable statutes of limitation.

Defendants cite portions of the FCRA for the propositions that a plaintiff may neither bring any action "in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information…," 15 U.S.C. § 1681h(e), nor support any statutory or common law action "based on allegations involving a subject matter regulated under the FCRA." Lufkin v. Capital One Bank (USA), N.A., 2010 U.S. Dist. LEXIS 71521, at *8 (E.D. Tenn. 2010) (citing

15 U.S.C. § 1681t(b)(1)(F)). Defendants then inexplicably contend that all four state law claims in Plaintiff's complaint are preempted by the FCRA because all four causes of action are premised upon Defendants' alleged inaccurate credit reporting or Defendants' response to Plaintiff's credit dispute notice. Defs.' Mem. Law at 11-12. Of course, even a cursory reading of the Complaint clearly reveals that, with the sole exception of defamation, Plaintiff's state law actions are not based upon credit reporting or any other activity covered by the FCRA or FDCPA.

While Plaintiff's defamation claim is indeed premised on conduct regulated by the FCRA, none of Plaintiff's other three state law causes of action are related in any way to credit reporting generally or credit investigations under 15 U.S.C. § 1681s-2(b). Plaintiff's breach of contract action is based entirely on Defendants' conduct in obtaining a judgment against Plaintiff in breach of the settlement agreement entered into by the parties on October 5, 2010. See Compl. (Doc. 1-1) ¶¶ 24-29; see also Compl. Ex. A.[3] Similarly, Plaintiff's fraud claim is based on Defendants' conduct in obtaining a judgment against Plaintiff despite Defendants' fraudulent representations, through their agent Finkelstein, Kern, Steinberg & Cunningham, that they would "cease all legal actions" because the account had been settled in full. See Compl. ¶¶ 30-39; see also Compl. Ex. A. Finally, Plaintiff's abuse of process claim is premised solely upon Defendants' misuse of the mechanisms of the legal system to obtain an unlawful judgment for the improper purpose of collecting a debt that had already been settled in full. See Compl. ¶¶ 46-56; see also Compl. Ex. A. Like the breach of contract and fraud causes of action, the abuse of

---

[3] Unlike the Lufkin case, where the plaintiff's breach of contract claim was premised upon a breach of a credit card agreement caused by improper credit reporting, Plaintiff's breach of contract claim here is based on Defendants' breach of their settlement agreement with Plaintiff and has no factual correlation to Plaintiff's credit reporting claims.

process claim is not preempted by the FCRA because it is wholly unrelated to credit reporting or any other subject matter governed by the FCRA.

Plaintiff's state law claims are also not barred by the applicable statutes of limitation. As an initial matter, Defendants only address one-year statutes of limitation in their summary judgment discussion. Plaintiff's breach of contract and fraud causes of action are subject to six-year and three-year statutes of limitation, respectively. See T.C.A. § 28-3-109(a)(3) (six-year statute of limitation for breach of contract); T.C.A. § 28-3-105; Med. Educ. Assistance Corp. v. Tenn. ex rel. E. Tenn. State Univ. Quillen Coll. Med., 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999) (confirming that fraud falls within the three-year limitations period of T.C.A. § 28-3-105). Defendants have advanced no argument suggesting that summary judgment is appropriate for either the breach of contract or fraud actions.

While a one-year statute of limitations may apply to Plaintiff's defamation and abuse of process claims, those causes of action in Plaintiff's Complaint are not time barred because Plaintiff did not discover the judgment or any of the adverse credit reporting until approximately the time she applied for a home loan with Y-12 Federal Credit Union. Compl. ¶ 16. "A cause of action accrues under the statute when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof." City State Bank v. Dean Witter Reynolds, Inc., 948 S.W.2d 729, 735 (Tenn. Ct. App. 1996) (citing Potts v. Celotex Corp., 796 S.W.2d 678 (Tenn. 1990)). Ordinarily, whether a plaintiff discovered or reasonably should have discovered an injury caused by a defendant's conduct "creates a genuine issue of fact, precluding disposition by summary judgment." City State Bank, 948 S.W.2d at 735; Prescott v. Adams, 627 S.W.2d 134, 139 (Tenn. Ct. App. 1981).

In this case, based on the Defendants' representations in their October 5, 2010 settlement letter, Plaintiff believed that the debt had been settled in full. She had no knowledge of the subsequent judgment or any reporting of that judgment until October 2011 or later. Lloyd Decl. ¶ 12. Because she filed her Complaint in September 2012, less than one year after she discovered the judgment, Plaintiff's Complaint is not time barred. Defendants have presented no argument that Plaintiff should reasonably have discovered her injury prior to October 2011; even if Defendants had made such an argument, that disputed issue of material fact would be appropriate only for the jury. Defendants are not entitled to summary judgment on any of Plaintiff's state law claims on statute of limitations grounds or otherwise.

## IV. MCM and Encore are not entitled to summary judgment on Plaintiff's FDCPA claims.

Next, Defendants assert that Midland Credit Management, Inc. and Encore Capital Group, Inc. (but not Midland Funding, LLC) are entitled to summary judgment on Plaintiffs' FDCPA claims. Defendants begin by asserting that Encore is not subject to the FDCPA because it is not a "debt collector" within the definition of the statute. Defendants insist that Encore is merely a holding company with no employees or operations. Moreno Dep. 102, 113-114.

However, Defendants also admit that Encore is the parent company of both Midland Funding and MCM and that it directs and controls the operations of both of its subsidiaries. Moreno Dep. 114; see also supra Part II.B (discussing the interconnected nature of the three Defendant entities). Other courts have previously addressed the convoluted distinctions between these three exact Defendants. In Rodriguez v. Fulton Friedman & Gullace, LLP, No. H-11-4592 (S.D. Tex. 2012) (a copy of which is attached hereto as Exhibit B), the U.S. District Court for the Southern District of Texas found that the plaintiff had alleged sufficient facts to demonstrate that Encore was a "debt collector" under the FDCPA such that a motion to dismiss was not

appropriate on those grounds (though the case was dismissed on other grounds). <u>Rodriguez</u>, slip

op. at 8. The court cited many of the same facts uncovered in this case during the 30(b)(6)

deposition of Defendants as sufficient allegations to demonstrate that Encore is a debt collector:

> Taking the facts in the light most favorable to Plaintiff, the Amended Complaint alleges sufficient facts to show that the Encore Defendants are debt collectors under the FDCPA. Encore purchases debt portfolios of customers whose debts have gone into default. MCM and Midland Funding are wholly owned subsidiaries of Encore. Midland Funding holds title to the portfolios that Encore acquires. MCM manages and services the collection of debts purchased by Encore. Encore oversees every aspect of the collection process, including efforts to collect debt that have been outsourced. Encore and MCM's management and oversight of the collection process amount to regularly attempting to collect debts owed to another. Similarly, holding title to debt portfolios and collaborating with a servicer to collect debt, as Midland Funding does, is, at a minimum, an indirect attempt to collect a debt owed to another. All of these entities are, therefore, collectively in the business of, "directly or indirectly," regularly attempting to collect debts owed to another.

<u>Rodriguez</u>, slip op. at 8-9 (internal citations omitted); <u>see also</u> <u>Miller v. Midland Credit</u>

<u>Management, Inc.</u>, 621 F.Supp.2d 621, 634-35 (N.D. Ill. 2009) (holding, in accord with prior

decisions, that Encore Capital Group, Inc. is a debt collector under the FDCPA despite Encore's

argument that it is merely a holding company with no employees); <u>Herkert v. MRC Receivables</u>

<u>Corp.</u>, 655 F.Supp.2d 870, 880-81 (N.D. Ill. 2009) (reaching same result).

Defendants also reiterate that MCM does not report judgments and therefore cannot be

responsible for FDCPA violations in this case. First, for the reasons described in Part II.C *supra*,

evidence in the record supports a finding that one of the Defendants, or its agent Finkelstein,

Kern, Steinberg & Cunningham, <u>did</u> report the judgment to credit reporting agencies. Second, as

set forth above and elsewhere in this Response, all three Defendant entities are so closely

connected that any distinction between them with regard to specific actions taken on accounts is

a mere sham. Defendants should not be permitted to limit their liability for FDCPA violations by partitioning off the tasks of individual entities despite the combined nature of their operations.[4]

Next, Defendants contend that Plaintiff's FDCPA claims against Midland Credit and Encore (but not against Midland Funding) are barred by the FDCPA's one-year statute of limitations. See 15 U.S.C. § 1681k(d). It is undisputed here that Plaintiff filed her lawsuit less than one year after discovering the presence of the unlawful judgment and the improper reporting of the judgment. See Lloyd Decl. ¶ 12; Lloyd Dep. 55. Although the Sixth Circuit has not yet determined whether the "discovery rule" applies to FDCPA actions, see Ruth v. Unifund CCR Partners, 604 F.3d 908, 914 (6th Cir. 2010) ("In resolving this appeal, we leave several questions for another day. We need not decide whether the FDCPA incorporates a discovery rule or permits equitable tolling."), other courts have held that it does. See, e.g., Mangum v. Action Collection Service, Inc., 575 F.3d 935, 939-41 (9th Cir. 2009) (holding that the FDCPA statute of limitations begins to run when the plaintiff discovers the violation).

The primary case relied upon by Defendants for the proposition that the FDCPA statute of limitations always begins to run on the date the violation occurs, Brandon v. Fin. Accounts Serv. Team, Inc., 701 F. Supp. 2d 990 (E.D. Tenn. 2010), is easily distinguishable: the court in Brandon found that the plaintiff had actual knowledge of the violation beyond the limitations period, notwithstanding the debt collector's mailing of subsequent additional demand letters which fell within the limitations period. Brandon, 701 F. Supp. 2d at 995.

---

[4] Courts adopt a similar "substance over form" analysis in the context of employment litigation. "Under the 'single employer' or 'integrated enterprise' doctrine, two companies may be considered so interrelated that they constitute a single employer subject to liability… In determining whether to treat two entities as a single employer, courts examine the following four factors: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993-94 (6th Cir. 1997) (internal citations omitted).

Under the facts of the instant case, given the Defendants' assurances that the debt was settled in full and that they would take to further legal action against her, Plaintiff did not know for many months and could not have reasonably known that Defendants had taken a judgment against her. Once Plaintiff did discover the FDCPA violations, she immediately took action to notify Defendants, all three major credit reporting agencies, and Defendants' attorneys about the problem. Lloyd Decl. ¶ 13. Only after Defendants completely ignored her requests and refused to correct their errors – and within one year of her discovery of the judgment and inaccurate credit reporting – did Plaintiff file this action. For all of the reasons stated above, none of these Defendants are entitled to summary judgment on Plaintiff's FDCPA claims.

**V.      Plaintiff has presented ample evidence of actual damages such that Defendants are not entitled to summary judgment.**

In their Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment, Defendants include a conclusory and one-paragraph-long additional argument that Plaintiff is unable to demonstrate actual damages supporting her claims. Defendants' claim is based entirely on Plaintiff not obtaining a home loan through Y-12 Credit Union, which Defendants speciously claim was "revealed" through the deposition of the credit union's authorized representative, Mike Clonce, on January 16, 2014. However, that information was "revealed" seven months earlier – as Defendants admit that Plaintiff discussed her inability to obtain a loan through Y-12 at her deposition in July 2013.

In her July 25, 2013 deposition, Plaintiff explained that she had not been able to obtain a loan at Y-12. Lloyd Dep. 90. She further testified that she had instead obtained a construction loan with Citizens Bank of Blount County ("Citizens Bank"), Lloyd Dep. 84-91, and that she would be converting the construction loan to a permanent loan with Wells Fargo after her home was complete. Id. at 84.

During her deposition, Plaintiff also described her damages related to the Citizens Bank and Wells Fargo loans. She explained that she would be paying a higher interest rate as a result of the Defendants' actions in taking a judgment against her. Id. at 84. On this portion of her damages, Plaintiff explained that she would be better able to quantify the amount of her damages after the permanent loan closed. Id. at 125. The permanent loan (a 30-year mortgage) closed in November 2013, and Plaintiff has calculated those damages as follows:

> Additional Interest under Construction Loan:   $  383.33
> Additional Interest under 30 year mortgage:   $9,370.18
> **Total Additional Interest:**   **$9,753.51**

Lloyd Aff. ¶ 8.

Plaintiff also explained that, because she was forced to obtain a mortgage with Wells Fargo instead of simply converting her construction loan to a permanent loan with Citizens Bank, she would be forced to pay double closing costs, which she would not have incurred but for the judgment. Lloyd Dep. 91. The extra closing costs with Wells Fargo incurred by Plaintiff – consisting of an origination fee of $2,418.80 and an appraisal fee of $450.00 – totaled $2,868.80. Lloyd Decl. ¶ 10(ii), (iii).

Plaintiff has also suffered further damages. Her FHA mortgage required an upfront payment of private mortgage insurance in the amount of $4,232.90, which Plaintiff would not have incurred but for the judgment. Id. ¶ 10(i). In addition, due to the judgment and the need to continuously keep up-to-date on her credit reports, Plaintiff paid $239.40 for a credit monitoring service which she would not have otherwise purchased. Id. ¶ 10(iv). Finally, Plaintiff spent $12.00 in certified mail communicating with Midland Funding concerning the wrongfully obtained judgment. Id. ¶ 10(v). Plaintiff's combined actual economic damages in this case total $17,106.61 to date.

**VI. Defendants' FDCPA and FCRA violations, as well as Defendants' commission of fraud and abuse of process as described in the Complaint, were at least reckless, if not willful and intentional, such that the issue of punitive damages should survive summary judgment.**

Finally, also in their Supplemental Memorandum, Defendants seek summary judgment on Plaintiff's claim for punitive damages on grounds that there is no evidence of intentional, reckless, malicious, or fraudulent conduct on the part of Defendants. On the contrary, there exists a variety of evidence, including much of the testimony of Defendants' 30(b)(6) representative John Moreno, that could lead a jury to reasonably award punitive damages for Plaintiff.

Defendants' actions in taking a judgment against Plaintiff for a debt that had previously been settled, despite specifically instructing Plaintiff not to appear for the scheduled court hearing and informing her that it would cease all legal action to collect the debt, see Compl. Ex. A, amounts to a serious – and at the very least reckless – fraud upon Plaintiff and abuse of the legal process, as well as a complete disregard for Plaintiff's rights. Furthermore, after Plaintiff brought the problem to their attention multiple times, Defendants never even acknowledged to Plaintiff that the judgment on her credit report was erroneous and never notified Plaintiff that they had taken or would take any action to correct the fraudulent judgment. See Lloyd Decl. ¶ 13, 17; Moreno Dep. 73-74.

Despite claiming to be a "consumer-first organization" that prides itself on "an entire consumer bill of rights," Moreno Dep. 76, Defendants admit that they have no general practice in place for correcting errors in credit reporting. Moreno Dep. 78. Defendants' actions in this case reveal a callous disregard for account debtors confirmed by Defendants' inability to explain any procedures that could have prevented or minimized the harm. This culpability rises at least to the level of recklessness and willfulness, if not intentional conduct, and punitive damages are appropriate under Tennessee law and the applicable federal statutes. See, e.g., 15 U.S.C. §

19

1681n(a); <u>Safeco Ins. Co. of Am. v. Burr</u>, 551 U.S. 47 (2007) (holding that the requirement of willful conduct to support a punitive damages award under the FCRA includes reckless disregard of a statutory duty under the FCRA); <u>Saunders v. Equifax Information Services, L.L.C.</u>, 469 F. Supp. 2d 343, 351-52, 356 (E.D. Va. 2007) (upholding $80,000 punitive damages award under the FCRA even in the absence of any actual compensatory damages); <u>Wilson v. GMAC Financial Services Corp.</u>, 2009 WL 467583, *6 (E.D. Tenn. Feb. 24, 2009) (appropriateness of punitive damages under Tennessee law for intentional, malicious, or reckless conduct).

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment on all of the grounds stated in Defendants' initial Memorandum and Supplemental Memorandum filed in support thereof.


Respectfully submitted this the 4th day of March, 2014.


LACY, PRICE & WAGNER, P.C.

By: /s/ James H. Price
      James H. Price (BRR #016254)
      W. Allen McDonald (BPR #016210)
      249 N. Peters Road, Ste. 101
      Knoxville, TN  37923
      (865) 246-0800
      *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the United States District Court for the Eastern District of Tennessee by using the CM/ECF system and also served a copy upon the following by U.S. Mail, postage prepaid, on this the 4th day of March, 2014:

> M. Brant Pettis (MS Bar No. 101976)
> BALCH & BINGHAM LLP
> 1310 25th Avenue
> Gulfport, MS 39501
> Telephone: (228) 214-0426
> Facsimile: (228) 864-8221
> *Pro Hac Vice Admission*
>
> Chris Heinss (BPR No. 23285)
> BALCH & BINGHAM LLP
> 1901 Sixth Avenue North, Suite 1500
> Birmingham, AL 35203-4642
> Telephone: (205) 226-3468
> Facsimile: (205) 488-5642
> *Attorneys for Defendants*

LACY, PRICE & WAGNER, PC

By: /s/ James H. Price
      James H. Price (BRR #016254)

21