UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LAUREN B. LLOYD,                          )
                                          )
              Plaintiff,                   )
                                          )
v.                                        )    No.: 3:12-CV-566-TAV-HBG
                                          )
MIDLAND FUNDING, LLC;                     )
MIDLAND CREDIT MANAGEMENT, INC.;          )
and ENCORE CAPITAL GROUP, INC.,           )
                                          )
              Defendants.                  )

## MEMORANDUM OPINION

This civil action is before the Court on two motions: (1) Defendants' Motion for Summary Judgment [Doc. 8] and (2) defendants' Objections to and Motion to Strike Portions of Plaintiff's Declaration and Exhibit A thereto [Doc. 34]. Plaintiff has responded to both motions [Docs. 30, 36], and defendants have replied [Docs. 35, 37]. For the reasons stated below, the Court will **GRANT** defendants' motion to strike in part, and **DENY** it in part. The Court will also **GRANT** defendants' motion for summary judgment in part and **DENY** it in part.

## I.    Background

On June 7, 2010, plaintiff received notice from counsel for defendant Midland Funding, LLC ("Midland Funding") stating that it had been retained to collect a debt of $7, 288.72 [Doc. 1-1 ¶ 10]. Plaintiff's debt was initially owed to Citibank, but had been acquired by Midland Funding [Doc. 9]. Midland Credit Management, Inc. ("MCM"), as

servicer of the debt, furnished all information about plaintiff's account to credit reporting agencies [*Id.*].   After unsuccessful attempts by MCM to collect on the debt, Midland Funding brought an action against plaintiff in the General Sessions Court of Blount County, Tennessee seeking to collect the amount owed [*Id.*; Doc. 1-1 ¶ 11].   Before the scheduled court date, however, plaintiff and Midland Funding entered into an agreement for plaintiff to pay $4,000.00 in satisfaction of the entire debt [Doc. 1-1 ¶ 12].   According to plaintiff, on October 5, 2010, she received a letter from Midland Funding's counsel confirming their agreement and the receipt of the $4,000.00 payment, and also stating that the debt was paid in full and that "Midland Funding would cease all legal actions related to the collection of the debt" [*Id.*].   Plaintiff also states that after the settlement with Midland Funding, she was assured that she would not have to appear in the Blount County General Sessions Court for the scheduled October 6, 2010 court date [*Id.* ¶ 13]. On October 6, 2010, however, a default judgment was entered against plaintiff in favor of Midland Funding in the Blount County General Sessions Court [Doc. 9].

In February 2012, plaintiff attempted to obtain a home loan for $175,000.00 from her credit union [Doc. 1-1 ¶ 16].   It was at this time that plaintiff first discovered that the default judgment for $7,288.67 had been entered against her on October 6, 2010 [*Id.* ¶¶ 14–15].   Plaintiff alleges that "[a]s a direct result of the default judgment in favor of Midland Funding and its presence on [her] credit report, the credit union informed [her] that it would make the loan to her only at a higher interest rate than it would have made the loan had the judgment not been present on her credit report" [*Id.* ¶ 16].

2

In July 2012, plaintiff mailed Midland Funding and its counsel a letter explaining that the default judgment was showing up on her credit reports and that the credit reporting agencies had determined that the debt was "verified" after investigating it [*Id*. ¶ 18]. Additionally, plaintiff's letter to Midland Funding demanded that it investigate the reporting of the judgment to the credit reporting agencies, and provide the results of its investigation to plaintiff along with all relevant documentation in accordance with the Fair Credit Reporting Act (the "FCRA") [*Id*.]. According to plaintiff, she received a letter from defendant MCM dated August 6, 2012 stating that that it would investigate the issues raised by plaintiff in her letter [*Id*. ¶ 20]. Plaintiff states that, however, neither Midland Funding nor MCM provided her with any documentation [*Id*.]. Plaintiff claims that despite her actions to have the judgment removed from her credit report, the default judgment had not been set aside as of the time she initiated this action,[1] and the investigations by the credit reporting agencies continued to turn up the judgment as "verified" [*Id*. ¶¶ 21–23].

Plaintiff commenced this action against Midland Funding, MCM, and Encore Capital Group, Inc. ("Encore) (collectively "defendants") on September 27, 2012 in the Circuit Court for Blount County, Tennessee [Doc. 1-1]. Defendants filed a timely notice of removal and removed the action to this Court on the basis of federal question and supplemental jurisdiction [Doc. 1]. In her complaint, plaintiff asserts the following

---

[1] Defendant Midland Funding filed a motion to set aside the judgment in Blount County General Sessions Court on August 1, 2012 [Doc. 8-5; Doc. 9]. The court entered an order setting aside the judgment on October 5, 2012 [Doc. 8-6; Doc. 9].

3

claims: breach of contract, common law fraud, defamation, abuse of process, a violation of the Fair Debt Collection Practices Act (the "FDCPA"), and a violation of the FCRA [Doc. 1-1].

## II.  Defendants' Motion to Strike [Doc. 34]

The Court will first address defendants' motion to strike plaintiff's declaration and Exhibit A to the declaration [Doc. 34][2] prior to its substantive discussion of plaintiff's claims, given that plaintiff relies on her declaration in her response to defendants' motion for summary judgment.

Rule 56(c)(4) of the Federal Rules of Civil Procedure sets forth the standard that affidavits to a motion for summary judgment must satisfy.  The rule provides: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  To the extent that plaintiff's declaration does not meet this standard, the Court will "disregard[]" the declaration.  *Logan v. Denny's Inc.*, 259 F.3d 558, 570 (6th Cir. 2001) (citation omitted).

---

[2] Defendants have moved to "strike" plaintiff's declaration.  A "motion to strike," however, applies only to pleadings.  *See* Fed. R. Civ. P. 12(f).  "A motion to strike is technically not available for motions for summary judgment and the attachments thereto."  *Loadman Grp. LLC v. Banco Popular N. Am.*, No. 4:10cv1759LIO, 2013 WL 1154528, at *1 n.1 (N.D. Ohio, Mar. 19, 2013) (citation omitted).  Even so, Fed. R. Civ. P. 56(c)(4) sets out the standards by which affidavits and declarations in support of summary judgment are governed; therefore, the Court will address defendants' objections within the parameters of that rule.

4

## A. Defendants' Assertion that Plaintiff's Declaration Offered Impermissible Expert Testimony

Defendants assert that the Court should strike paragraphs 3, 4, 5, 6, 7, 8, and 10 of plaintiff's declaration because plaintiff, who has not been identified as an expert witness, offers unqualified expert opinion regarding the manner in which credit reporting companies arrive at their scores, the lingering effect of a judgment on an individual's credit score even after it has been removed, and the amount of increase to the interest rate to her loan based on the presence of the judgment on her credit report. Defendants argue that this testimony is impermissible under Rule 701 of the Federal Rules of Evidence because plaintiff is not an expert witness. Plaintiff argues in response that the context of the declaration and the purpose for which it was filed—that is, to show that plaintiff can prove actual damages at trial and not the specific amount of her damages, allows her to proffer this testimony [Doc. 36]. Plaintiff also argues that her declaration is not based on specialized knowledge, but on her personal knowledge "derived primarily from her direct interactions with Y-12 Federal Credit Union, Citizens Bank of Blount County, and Wells Fargo Bank about her loans and loan applications," and supplemented by her professional experience in the lending industry [*Id.*].

Under the Federal Rules of Evidence, a lay witness may testify in form of an opinion as long as the opinion is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "Rule 701 was amended in 2000 'to eliminate the risk

5

that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert witness in lay witness clothing.'" *NGM Ins. Co. v. Walker Constr. & Dev., LLC*, No. 1:11-CV-146, 2012 WL 6553272, at *3 (E.D. Tenn. Dec. 13, 2012) (quoting Fed. R. Evid. 701 advisory committee notes (2000)). "The distinction between lay testimony, which 'results from a process of reasoning familiar in everyday life,' and expert testimony, which 'results from a process of reasoning which can be mastered only by specialist in the field' is 'far from clear in cases where [] a witness with specialized or technical knowledge was also personally involved in the factual underpinnings of the case.'" *Id.* (quoting *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007)). In cases such as these, "[t]he key to making a proper determination is to focus not on the witness, but on the testimony the witness intends to provide." *Id.* (internal citation and quotation marks omitted).

Here, plaintiff's declaration states: "[t]hrough my employment, I have gained extensive experience in the areas of consumer lending, loan determination, credit analysis, credit reporting procedures, collections, and other topics connected to consumer borrowing" [Doc. 31-1]. As a lay witness, plaintiff may testify concerning her personal knowledge of the facts of the case. She may not, however, apply the technical and specialized knowledge she may have gained working in the mortgage industry for six years to explain the lingering effects of a judgment on an individual's credit score even after it has been removed, the manner in which credit reporting agencies arrive at credit scores, or the minimum percentage increase in interest rate a borrower will be required to

6

pay because of the presence of a judgment on a credit report. *See, e.g., Braun Builders v. Kancherlapalli*, No. 09-11534-BC, 2010 WL 1981008, at *3 (E.D. Mich. May 18, 2010) (finding that the witness could testify concerning his personal knowledge of the facts of the case but could not apply his specialized knowledge gained through training as a construction contractor because such testimony falls under Rule 702). *But cf. NGM Ins. Co.*, 2012 WL 6553272, at *4 (finding that the witness' testimony was not expert testimony because it did not require him to apply any specialized knowledge).

As such, the Court finds that the statements contained in paragraphs 3, 4, 5, 6, 7, 8, and 10(i)–(iii)[3] are improper opinion testimony under Rule 701 because they are based on plaintiff's specialized knowledge. The Court will, therefore, disregard these paragraphs of plaintiff's declaration.

### B. Defendants' Assertion that Plaintiff's Declaration Contradicts her Deposition Testimony

Defendants argue that the Court should strike paragraphs 3, 4, 5, 6, 7, 8, 10, and 13 of plaintiff's declaration because they contradict plaintiff's sworn deposition testimony [Doc. 34].[4] "'When deciding the admissibility of a post-deposition affidavit at the summary-judgment stage, the district court must first determine whether the affidavit directly contradicts sworn testimony.'" *Loadman*, 2013 WL 1154528, at *4 (quoting

---

[3] The Court does not find that plaintiff's assessments in subsections (iv) and (v) of paragraph 10 are based on any technical or specialized knowledge which she may have gained from her employment.

[4] The Court need not address this argument with respect to paragraphs 3, 4, 5, 6, 7, 8, and 10(i)–(iii) because it has already determined it will disregard these portions of plaintiff's declaration.

7

*O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 593 (6th Cir. 2009)). "Absent a 'persuasive justification for the contradiction,' a directly contradictory affidavit should be disregarded." *Id*. (citing *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006)).

Here, defendants' argument in favor of striking paragraph 10 of plaintiff's declaration appears to extend solely to plaintiff's ability to testify to the resulting impact of the judgment on any interest rate she would receive after the judgment was removed from her credit report. As such, the Court finds that plaintiff's testimony in subsections (iii) and (iv) of paragraph 10 do not contradict plaintiff's deposition testimony, and will not be disregarded based on this assertion.

Additionally, defendants have moved to strike paragraph 13 of plaintiff's complaint. In plaintiff's declaration, she states: "In the months after I discovered the judgment, I made several attempts to contact Midland Funding, LLC, Midland Credit Management, Inc., the Finklestein firm, and all three of the major credit reporting agencies. The results of these inquiries were always that the judgment was 'verified' or 'reporting correctly'" [Doc. 31-1 ¶ 13]. Defendants assert that this contradicts plaintiff's deposition because in her deposition, she could only describe one conversation with a Midland entity [Doc. 34]. Plaintiff's deposition, however, does state that she may have made more than one phone call to Midland Funding and the other parties listed in her declaration [*See* Doc. 32-1 p. 64]. The Court finds that the mere fact that plaintiff was not able to remember with clarity how many times she attempted to contact defendants

8

and what the exact content of those conversations were does not create a contradiction between her deposition testimony and her declaration. *But cf.* *Loadman*, 2013 WL 1154528, at *4 (finding that the plaintiff's affidavit contradicted its deposition testimony where plaintiff testified to not recalling the specifics of a conversation during deposition, but was able to recall the same conversation word-for-word in a post-deposition affidavit). Accordingly, the Court will not disregard paragraph 13 of plaintiff's declaration.

### C. Defendants' Assertion that Exhibit A to Plaintiff's Declaration is Untimely and Disallowed under Fed. R. Civ. P. 37(a)(1)

Defendants also argue that the Court should strike Exhibit A to plaintiff's declaration and the testimony in paragraph 10 which arises from the exhibit [Doc. 34].[5] In support of this motion, defendants argue that plaintiff's exhibit seeks to introduce evidence that should have been produced pursuant to Rule 26 of the Federal Rules of Civil Procedure and before the time set for the close of discovery by the Court's scheduling order [*Id.*]. In response, plaintiff argues that she disclosed the document when it became available to her and that defendants were not prejudiced or harmed by the delay [Doc. 36].

As the Court has previously noted, a declaration "is not a pleading that is subject to a motion to strike under Rule 12(f)." *Larson v. Wal-Mart Stores, Inc.*, No. 3:08-CV-86, 2008 WL 4924728, at *2 (E.D. Tenn. Nov. 14, 2008) (citation omitted). Likewise,

---

[5] The Court does not address this argument with respect to paragraph 10 as the Court has already determined that it will strike subsections (i)–(iii) of paragraph 10 which, incidentally, are the only portions that rely on Exhibit A.

9

exhibits to declarations are not subject to motions to strike under Rule 12(f). *See id.* "While it is inappropriate to strike affidavits and exhibits from the record, the court may disregard such filings if they are inadmissible for some reason." *Id.* (citing *Lombard v. MCI Telecomms. Corp.*, 12 F. Supp. 2d 621, 625 (N.D. Ohio 1998) ("[A] court should '*disregard*' inadmissible evidence, not strike that evidence from the record.")). Accordingly, the Court must decide whether plaintiff's Exhibit A is inadmissible, and in turn, whether it will disregard the exhibit.

"It is well-established that Fed. R. Civ. P. 37(c)(1) . . . mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified. *Vance ex rel. Hammons v. United States*, No. 98-5488, 1999 WL 455435, at *3 (6th Cir. June 25, 1999) (citing *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998)). The commentary to Rule 37(c)(1) "strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Vance*, 1999 WL 455435, at *5.

Here, plaintiff's Exhibit A is a settlement statement of her Wells Fargo home loan which was not disclosed to defendants until March 3, 2014, the day before plaintiff filed her declaration, and well after the deadline for discovery in the Court's Scheduling Order. [Doc. 34]. Although defendants are correct that plaintiff's untimely disclosure violates Rule 26, the Court finds that the violation was not harmful or prejudicial to defendants as to require a mandatory sanction under Rule 37(c)(1). Particularly, the Court notes that

10

plaintiff previously informed defendants, during her deposition and in response to defendants' interrogatories, that her damages from the Wells Fargo loan could not be computed until the loan had closed [*See* Doc. 36]. The Court finds that this knowledge on the part of defendants that a final computation of plaintiff's damages depended on a document that she would produce subsequently, coupled with the lack of appearance of ill-will on plaintiff's part, renders the violation harmless. Accordingly, the Court will not disregard Exhibit A to plaintiff's declaration.

### D. Defendants' Assertion that Plaintiff's Declaration Contains Inadmissible Hearsay

Defendants have next moved to strike paragraphs 7, 14, and 15 of plaintiff's declaration, as well as Exhibit B to the declaration [Doc. 34].[6] Defendants argue that plaintiff failed to properly authenticate and lay a foundation for Exhibit B, and plaintiff's statements in paragraphs 14 and 15, which are based on Exhibit B, are hearsay with no recognizable exceptions [*Id*.]. In response, plaintiff argues that defendants laid a foundation for her Exhibit B by including it as part of a collective exhibit to plaintiff's deposition, and by questioning plaintiff about it during her deposition [Doc. 36]. Additionally, plaintiff argues that Exhibit B is not hearsay because it is not being offered for the truth of the matter asserted, but rather, merely to show that the balance listed in the exhibit does not match the balance on her credit report [*Id*.].

---

[6] Because the Court has previously found that it will disregard paragraph 7 of plaintiff's declaration, it will not consider defendants' argument here.

Although the Court may not strike exhibits from the record, the Court may disregard them if they are inadmissible for some reason. *See Larson*, 2008 WL 4924728, at *2. Under Rule 56(e) of the Federal Rules of Civil Procedure, a document submitted in support of a motion for summary judgment must satisfy certain requirements otherwise, it will be disregarded. *See Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993). "It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment. Unauthenticated documents may not be used to support a motion for summary judgment." *Jackson v. Tenn. Dept. of Safety*, No. 3:05-CV-231, 2009 WL 1437570, at *4 (E.D. Tenn. May 21, 2009) (internal citations and quotation marks omitted); *see also Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) ("[E]vidence submitted in opposition to a motion for summary judgment must be admissible" (citation omitted)).

Here, plaintiff's Exhibit B consists of two pages from the credit reports she obtained which reflects the default judgment entered against her [Doc. 36; Doc. 31-1]. In her declaration, plaintiff makes no attempt to authenticate or lay any foundation for the admissibility of Exhibit B; rather, she merely references its contents in paragraph 14 and alludes to it again in paragraph 15 [Doc. 31-1]. The Court finds that this document has not been properly authenticated and must, therefore, disregard it. Additionally, the Court must disregard the portions of plaintiff's declaration in paragraphs 14 and 15 that are based on Exhibit B.

12

### E. Defendants' Assertion that Plaintiff's Declaration is Based Upon Speculation

Finally, defendants assert that the Court should strike paragraph 15 of plaintiff's declaration in its entirety because it constitutes speculation rather than testimony regarding facts about which plaintiff has personal knowledge [Doc. 34]. Defendants also argue that plaintiff's declaration in paragraph 15 contradicts her prior deposition testimony that she was not certain who reported the judgment on her credit report [*Id*]. In response, plaintiff argues that her declaration was not speculative but rather, a reasoned conclusion based on her exhibits [Doc. 36]. Plaintiff also argues that her declaration does not contradict her deposition testimony because at the deposition she testified she did not know who had reported the judgment, but was able to draw a reasonable conclusion after further analysis of the credit reports [*Id*.].

"Affidavits 'must concern facts as opposed to legal conclusions, assumptions, or surmise.'" *Peebles v. A. Schulman, Inc.*, No. 3:04-0754, 2006 WL 572337, at *7 (M.D. Tenn. Mar. 7, 2006) (quoting *Perez v. Volvo Car Corp.*, 247 F.3d 303, 316 (1st Cir. 2001)). Plaintiff acknowledges that her statements in paragraph 15 were reasonable conclusions [*See* Doc. 36]. These conclusions do not constitute "personal knowledge" as required by Rule 56(c)(4). *See Jones v. Butler Metro. Hous. Auth.*, 40 F. App'x 131, 135 (6th Cir. 2002) (affirming the district court's striking of affidavits offered in support of a response to summary judgment because the affidavits merely expressed "beliefs based on innuendo, rumor, and hearsay" without "evidence to support the[] beliefs"); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992) (affirming district court's finding

13

that affidavit was not proper Rule 56 affidavit because the statements in the affidavit were "nothing more than rumors, conclusory allegations, and subjective beliefs"); *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949) ("A statement in such affidavit as to what the affiant 'verily believes' does not satisfy this requirement. Belief, no matter how sincere, is not equivalent to knowledge."); *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 956 (S.D. Ohio 2000) ("[S]tatements made 'on information and belief' are insufficient to satisfy the personal knowledge requirement of Rule 56(e)."). Hence, the Court will disregard paragraph 15 of plaintiff's declaration in its entirety.

## III. Plaintiff's Assertion that Defendant's Summary Judgment Motion Relies on Inadmissible Affidavits [Doc. 30]

In plaintiff's response to defendants' motion for summary judgment [Doc. 30], she first argues that the three affidavits signed by John Moreno, which defendants rely on, were not made upon the affiant's personal knowledge and are, therefore, inappropriate for the Court's consideration under Rule 56(c)(4) of the Federal Rules of Civil Procedure. Given that defendants' motion for summary judgment relies on the contents of these affidavits, the Court will address their admissibility before addressing plaintiff's substantive claims.

Under Rule 56(c)(4) of the Federal Rules of Civil Procedure, affidavits to a motion for summary judgment must meet certain standards. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to

14

testify on the matters stated." Fed. R. Civ. P. 56(c)(4). To the extent that Moreno's declaration does not meet this standard, the Court will "disregard[]" the affidavit. *Logan*, 259 F.3d at 570.

Plaintiff argues that John Moreno did not "have personal knowledge of any of the relevant matters averred in his affidavits. Rather, Mr. Moreno simply reiterated information allegedly derived from 'account notes' in [d]efendants' electronic database and other documents selected and provided by corporate counsel" [Doc. 30]. Particularly, plaintiff argues that even though Moreno is a Rule 30(b)(6) witness, defendants are not relieved of the requirement that he have personal knowledge and not merely offer hearsay testimony [*Id*.]. In response, defendants contend that personal knowledge is not required for corporate representatives, corporate representatives must rely on corporate records, and corporate testimony is only hearsay if not supported by additional evidence [Doc. 35].

Although Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge," Fed. R. Civ. P. 56(c)(4), a Rule 30(b)(6) representative may "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6); *see, e.g, Humphreys v. Bank of Am.*, No. 13-5793, 2014 WL 521169, at *6 n.6 (6th Cir. Feb. 11, 2014) ("Still, as [the defendant's] Rule 30(b)(6) representative, he may 'testify about information known or reasonably available to the organization.'" (quoting Fed. R. Civ. P. 30(b)(6)). While Rule 30(b)(6) does not create a hearsay exception allowing a witness "to simply repeat

15

statements made by corporate officers and employees," it "does permit designated persons without personal knowledge to testify on behalf of a corporation on matters within the corporation's knowledge." *Cooley v. Lincoln Elec. Co.*, 693 F. Supp. 2d 767, 791 (N.D. Ohio 2010) (internal quotation marks and citations omitted).

Here, plaintiff's assertion that Moreno's affidavits have to be based on his personal knowledge is misplaced. Rather, Moreno is allowed to base the testimony in his affidavits on matters that are within the organizations' knowledge. *See* Fed. R. Civ. P. 30(b)(6); *Cooley*, 693 F. Supp. 2d at 791. Additionally, plaintiff's argument that Moreno's testimony is hearsay, because he relies on account notes created by others, and on discussions with corporate counsel, is similarly misplaced. "[T]he rule that a 30(b)(6) designee cannot offer hearsay testimony holds especially true when there is no independent evidentiary basis that might otherwise prove the truth of the hearsay, such as corroborating testimony from the hearsay declarant." *Cooley*, 693 F. Supp. 2d at 791. In Moreno's affidavits, he testifies that he based his testimony on records that are kept in the usual course of business [Doc. 8-2]. Under Rule 803(6) of the Federal Rules of Evidence, these records of regularly conducted activities are an exception to hearsay and are, therefore, admissible. Accordingly, the Court finds that Moreno's affidavits are proper under Rule 56(c)(4) of the Federal Rules of Civil Procedure because they contain testimony that is within the knowledge of the defendant organizations as required by Rule 30(b)(6), and they rely on evidence that is otherwise admissible under the Federal Rules of Evidence.

16

## IV. Defendants' Motion for Summary Judgment [Doc. 8].[7]

Defendants have moved for summary judgment of all of plaintiff's claims under the FCRA, all of plaintiff's claims arising under state law, and plaintiff's claims against MCM and Encore arising under the FDCPA [Doc. 9].[8]

### A. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 320 n.2 (1986); *Moore v. Phillips Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence

---

[7] Defendants have also filed a supplemental memorandum in support of their motion for summary judgment [Doc. 19], which the Court will address as one motion in connection to defendants' initial summary judgment motion and supporting memorandum [Docs. 8, 9].

[8] Defendants have not moved for summary judgment on plaintiff's claims against Midland Funding arising under the FDCPA; therefore, the Court does not address that claim and notes that it is still pending.

17

of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id*.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id*. at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 889 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### B. Plaintiff's FCRA Claims

Plaintiff's complaint alleges that defendants violated 15 U.S.C. § 1681s-2(a)(1)(A), (a)(1)(B), (a)(2), (a)(8), (b) by providing information to credit reporting agencies which it knew or had reasonable cause to believe was inaccurate, by continuing to provide the inaccurate information to credit reporting agencies even after receiving notice from plaintiff, by failing to correct or update the information provided, and by wilfully failing to conduct a sufficient investigation in response to plaintiff's demands

18

[Doc. 1-1 ¶¶ 68–71]. In support of their summary judgment motion, defendants argue that plaintiff's claims under 15 U.S.C. § 1681s-2(a) should be dismissed because there is no private right of action under the statute [Doc. 9]. Defendants also argue that although plaintiff can bring a private action under § 1681s-2(b), they are entitled to summary judgment because Encore and Midland Funding are not furnishers of credit information as required by the statute, and plaintiff cannot prove that MCM reported the state court judgment to any credit reporting agency [*Id.*]. Particularly, defendants contend that MCM was not under a duty to investigate because it did not report plaintiff's judgment to any consumer reporting agency and only the person who furnished the information has a duty to investigate [*Id.*; Doc. 35]. In response, plaintiff states that there is a genuine dispute as to whether MCM reported the judgment to the consumer reporting agencies and that, regardless, MCM was under a duty to investigate after receiving notice of a dispute [Doc. 30]. Additionally, plaintiff posits that Encore and Midland Funding should be considered furnishers of information and deemed to have received the notice of dispute sent to MCM because the nature of the three companies is so comingled such that they should be considered as one [*Id.*].

The FCRA, 15 U.S.C. § 1681, *et seq.*, was enacted to regulate credit reports, to provide guidelines for credit reporting agencies and entities that furnish consumer information to credit reporting agencies, and to provide protection to consumers. *Ruggiero v. Kavlich*, 411 F. Supp. 2d 734, 736 (N.D. Ohio 2005). The Act covers three main actors: (1) credit reporting agencies; (2) users of consumer reports; and (3)

furnishers of information to consumer reporting agencies. *Carney v. Experian Info. Solutions Inc.*, 57 F. Supp. 2d 496, 500 (W.D. Tenn. 1999). The FCRA requires furnishers of credit information to provide accurate information and to investigate upon receiving a notice of a dispute from a credit reporting agency. *See* 15 U.S.C. § 1681s-2(a).

The FCRA provides specific steps and timeframes for investigating and correcting any disputed credit information when the information is being disputed by a consumer. *See* 15 U.S.C. § 1681i. The FCRA imposes two primary duties on entities that furnish information to credit reporting agencies. First, they have a duty to provide accurate information. 15 U.S.C. § 1681s-2(a). Second, they have a duty to investigate upon receiving notice of a dispute from a credit reporting agency. 15 U.S.C. § 1681s-2(b); *Downs v. Clayton Homes Inc.*, 88 F. App'x 851, 852 (6th Cir. 2004). It is well established that "the duties imposed by subsection (a) can only be enforced by government agencies and officials." *See Westbrooks v. Fifth Third Bank*, No. 3:05-0664, 2005 WL 3240614, at *3 (M.D. Tenn. Nov. 30, 2005). There is no private right of action under this section of the FCRA.

However, "unlike § 1681s-2(a), courts have found that a private right of action exists under § 1681s-2(b)." *Id.*; *see also Downs,* 88 F. App'x at 851; *Nelson v. Chase Manhattan Mtg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002); *Young v. Equifax Credit Info, Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002); *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 783 (W.D. Ky. 2003); *Zager v. Downs*, No. 1-03-1153, 2005 WL

2008432 (W.D. Tenn. Aug. 16, 2005). Liability under § 1681s-2(b) is only imposed on a furnisher of credit information after it receives notice of a dispute pursuant to § 1681i(a)(2). The explicit language of § 1681i(a)(2) requires an individual to give notice to a credit reporting agency, not directly to the furnisher of information. *See Downs,* 88 F. App'x at 853; *Stafford*, 262 F. Supp. 2d at 784; *Westbrooks*, 2005 WL 3240614, at *4 ("[U]nless a credit reporting agency notifies a furnisher of information of a dispute, an individual may not pursue a claim against the furnisher of information under the statute, even if the individual has apprised the furnisher of information of the dispute.").

Here, plaintiff agrees that there is no private right of action under 15 U.S.C. § 1681s-2(a) [Doc. 30]. Accordingly, defendants' motion as to plaintiff's claims arising under § 1681s-2(a) will be granted. The only issues remaining before the Court under the FCRA are whether genuine issues of material fact remain as to plaintiff's claims under § 1681s-2(b). § 1681s-2(b) only imposes a duty on furnishers of credit information and these duties "are triggered only upon notice received from a consumer reporting agency . . . ." *Carney*, 57 F. Supp. 2d at 502. The actual language of the statute provides that "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by *a person* to a consumer reporting agency, *the person shall* . . . ." 15 U.S.C. § 1681s-2(b)(1) (emphasis added). Based on the language of the statute, the Court is persuaded by defendants' argument that the duty to investigate under § 1681s-2(b) only extends to the furnisher of the particular information that has been disputed. *See also Merrit v. Experian*, No. 13-

1740, 2014 WL 1228267, at *3 (6th Cir. Mar. 25, 2014) (finding that the plaintiff did not state a claim under the FCRA where there was no evidence that the company furnished information to the consumer reporting agency, that the consumer reporting agency notified the company of the dispute, or that the company failed to investigate reasonably); *Boggio v. USAA Fed. Sav. Bank*, 696 F. 3d 611, 614 (6th Cir. 2012) (construing the duty under § 1681s-2(b) as requiring the consumer reporting agency to notify the original furnisher of information of a dispute).

Additionally, the Court does not find that there is sufficient evidence in the record to support the existence of a genuine issue of material fact regarding whether MCM was the original furnisher of information to the consumer reporting agencies or not. The record indicates that although MCM provides credit information to consumer reporting agencies, it does not report judgments and it did not report plaintiff's judgment to any consumer reporting agencies [Doc. 8-2 ¶ 9]. Plaintiff also stated in her deposition that she did not know who reported her judgment to the consumer reporting agencies [Doc. 32-1 pp. 57–58].[9]

---

[9] Plaintiff's response to defendants' motion for summary judgment bases her evidence of a genuine dispute on testimony contained in her declaration [Doc. 31-1]. Because the Court has previously found that the applicable portion of her declaration and exhibits thereto contain speculative and conclusory statements, and the exhibit has not been authenticated, the Court will disregard this testimony for the purpose of this motion.

Accordingly, the Court will grant defendants' motion for summary judgment on plaintiff's claims under the FCRA because plaintiff has not shown that MCM reported her judgment to any credit reporting agencies.[10]

### C.    State Law Claims

Plaintiff also asserts claims under Tennessee law against defendants for breach of contract, common law fraud, defamation, and abuse of process [Doc. 1-1].  Defendants argue that all of plaintiff's state claims are preempted by the FCRA [Doc. 9]. Additionally, defendants argue that plaintiff's claims for defamation and abuse of process are both barred by their one-year statute of limitations [*Id*.].  In response, plaintiff argues that outside of her claim for defamation, none of her other claims are premised on conduct regulated by the FCRA [Doc. 30].  Plaintiff also argues that her defamation and abuse of process claims are not time-barred because the statute of limitations on both claims did not start to toll until after her discovery of the entry and reporting of the judgment [*Id*.].  Defendants' reply argues that although plaintiff's claims for abuse of process, common law fraud, and breach of contract deal with the initial entry of judgment by the Blount County Court, plaintiff's damages under each of these claims derive solely from the reporting of the judgment, and establishing damages is an essential element of each of plaintiff's claims [Doc. 35].  In the alternative, defendants argue that plaintiff cannot establish damages for any of her claims [*Id*.].

---

[10] Because the Court finds that MCM was not under a duty to investigate any disputed information under the FCRA, the Court does not address plaintiff's argument concerning piercing the corporate veil between defendants.

23

The FCRA contains two preemption provisions, each of which limit a plaintiff's ability to assert state law claims based on a defendant's furnishing of information to a credit reporting agency. The first, contained in § 1681h(e) provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user or a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). The second preemption provision of the FCRA was subsequently enacted by Congress in connection with the Consumer Credit Reporting Reform Act of 1966. Section 1681t(b)(1)(F) provides that "no requirement or prohibition may be imposed under the laws of any state . . . with respect to the subject matter regulated under § 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies."

The majority of courts have found that § 1681t(b)(1)(F) applies to preempt both statutory and common law claims under state law that are based on allegations involving a subject matter regulated under the FCRA. Yet, other courts have adopted a different approach, finding that preemption of state common law tort claims relating to the furnishing of credit information should be analyzed under § 1681h(e) and state statutory claims relating to the furnishing of credit information should be analyzed under §

24

1681t(b)(1)(F). This Court, however, has previously adopted the approach that "all state claims that do not allege willfulness are preempted by § 1681h(e), and any surviving claims alleging willfulness are preempted under § 1681t(b)(1)(F) if they involve a subject matter regulated under § 1681s-2." *Westbrooks*, 2005 WL 3240614, at *6; *see also Birdsall v. Peoples Bank of the South*, No. 3:12-CV-480, 2014 WL 640704, at *4 (E.D. Tenn. Feb. 19, 2014); *Lufkin v. Capital One Bank*, No. 3:10-CV-18, 2010 WL 2813437, at *3 (E.D. Tenn. July 16, 2010).

Here, plaintiff's state law claim for defamation is entirely based upon conduct that is regulated under § 1681s-2—that is, defendant's alleged improper reporting of plaintiff's credit information. As such, the Court finds that this claim is preempted under the FCRA.

### 1. Breach of Contract and Common Law Fraud

Turning next to plaintiff's claims for breach of contract and common law fraud, the parties do not dispute that these claims are not based on a subject matter regulated under § 1681s-2; however, defendants argue that they are nevertheless preempted because the damages plaintiff seeks to recover under these claims are all related to the alleged credit reporting activity [Doc. 35]. To recover on her claims for common law fraud and breach of contract, plaintiff must prove damages as an essential element of each claim. *See e.g., Diggs v. Lasalle Nat. Bank Ass'n*, 387 S.W.3d 559, 564 (Tenn. Ct. App. 2012) (stating that the plaintiff must prove that he suffered damages as part of his claim for fraud); *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct.

App. 2005) (providing that the third element of a breach of contract claim is "damages caused by the breach of the contract").

The main question the Court must address is what damages are available to plaintiff for defendants' alleged breach of contract and fraud. Plaintiff's complaint alleges that she suffered actual damages from defendants' breach of contract and fraud in the form of "being required to pay a higher interest rate on her home loan" [Doc. 1-1 ¶¶ 29, 38]. To the extent that plaintiff's damages "relate directly to the duties and responsibilities of furnishers of information to a consumer reporting agency, plaintiff's state law claims are preempted under §§ 1681t(b)(1)(F) and 1681h(e)." *Lufkin*, 2010 WL 2813437, at *4; *see also Parker v. PHH Mortg. Corp.*, No. 4:11CV00439, 2014 WL 626594, at *3 (E.D. Ark. Feb. 18, 2014) (finding that the FCRA precluded the plaintiff from seeking damages that were related to the defendant providing false information to credit agencies). Accordingly, the Court finds that because plaintiff's alleged damages for her breach of contract and abuse of process claims are directly related to defendants' alleged reporting of her default judgment, they are preempted by the FCRA.

## 2. Abuse of Process

As with plaintiff's breach of contract and common law fraud claims, the parties do not dispute that the basis of plaintiff's abuse of process claim is the entry of judgment against plaintiff in the Blount County General Sessions Court proceeding. However, defendants argue again that plaintiff's claim is precluded by the FCRA because proving damages is an essential element of the claim and plaintiff's damages are directly related

26

to conduct regulated under § 1681s-2. The Court is not persuaded by this argument but, rather, finds that proving damages is not an essential element of plaintiff's abuse of process claim. *See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen, & Gingsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. 1999) (quoting *Priest v. Union Agency*, 125 S.W.2d 142, 143 (Tenn. 1939 ("To establish a claim for abuse of process in Tennessee . . . , two elements must be alleged: '(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge.'")). Alternatively, defendants have argued that plaintiff's abuse of process claim is barred by Tennessee's one-year statute of limitations [Doc. 9]. In response, plaintiff argues that the discovery rule should apply [Doc. 30].

Under Tennessee law, "[a] cause of action accrues under the statute when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof." *City State Bank v. Dean Witter Reynolds, Inc.*, 947 S.W.2d 729, 735 (Tenn. 1996) (citing *Potts v. Celotex Corp.*, 796 S.W.2d 678 (Tenn. 1990)). "Ordinarily, the question of whether a plaintiff knew or should have known that a cause of action existed is a question of fact, inappropriate for summary judgment." *Id*. (citations omitted). However, courts have been reluctant to apply the discovery rule where the matter was a public record that could have been discovered through due diligence. *See Bell v. Goforth*, No. M2004-00997-COA-R3-CV, 2006 WL 627189, at *7 (Tenn. Ct. App. Mar. 14, 2006) (finding that the plaintiff could have easily searched the public records to discover the information giving rise to her cause of action);

*see also Ruth v. Unifund CCR Partners*, 604 F.3d 908, 911 (6th Cir. 2010) (quoting *Wood v. Carpenter*, 101 U.S. 135 (1879) ("When individuals have 'the means of discovery in their power,' they generally are 'held to have known it.'")). Although "the mere availability of open and readily accessible public records may not suffice by itself to defeat a fraudulent-concealment claim," *id.*, plaintiff has not alleged that defendants attempted to conceal the entry of the judgment from her. As such, the Court finds that plaintiff's claim for abuse of process is time-barred because she could have reasonably discovered the entry of the default judgment through public court filings.[11]

### D.    Plaintiff's FDCPA Claims

Defendants have moved for summary judgment on plaintiff's claims against defendants Encore and MCM arising under the FDCPA [Doc. 9]. In support of their motion, defendants argue that Encore is not a debt collector as contemplated by the FDCPA, that plaintiff has not alleged any actions of MCM to be the basis of her FDCPA claim, and that regardless, plaintiff's claim under the FDCPA is barred by the applicable one-year statute of limitation [*Id.*]. In response, plaintiff argues that the interconnected nature of Encore, MCM, and Midland Funding should make it so that Encore is considered a debt collector for the purposes of the FDCPA [Doc. 30]. Additionally, plaintiff argues that the discovery rule should apply to the applicable one-year statute of

---

[11] Because the Court finds that plaintiff's state-law claims will be dismissed on the grounds discussed above, the Court does not reach defendants' argument that plaintiff cannot establish damages for any of her claims here.

28

limitation, so that it did not begin to toll until she discovered the entry of the default judgment against her [*Id.*].[12]

15 U.S.C. §1692k(d) provides that "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs." This Court has previously stated that "the focus is on the date on which the violation occurs, not on the date on which the violation is known." *Brandon v. Fin. Accounts Servs. Team, Inc.*, 701 F. Supp. 2d 990, 996–97 (E.D. Tenn. 2010) (internal citations and quotation marks omitted). The Court notes plaintiff's argument that the Sixth Circuit has yet to rule definitively on whether the discovery rule applies to claims under the FDCPA [Doc. 30]; *see also Ruth*, 604 F.3d at 914 ("We need not decide whether the FDCPA incorporates a discovery rule or permits equitable tolling."). However, even circuits that have applied the discovery rule still apply the standard of when the plaintiff discovered or could have discovered the violation. *See, e.g., Magnum v. Action Collection Serv., Inc.*, 575 F.3d 935, 941 (9th Cir. 2009) (finding that the statute of limitations under the FDCPA would start to toll when the plaintiff "discovered (or could have discovered)" the violation). Here, the Court has previously found that plaintiff could have discovered defendants' alleged violation as it was a public record.

---

[12] Plaintiff has also argued in her response that there is a dispute as to whether MCM reported the judgment or not; however, because the Court has previously found that it would disregard this portion of plaintiff's declaration, *see supra* Part.II.E., the Court will not address this portion of plaintiff's argument.

Accordingly, the Court finds that plaintiff's claim is time barred by the one-year statute of limitation.[13]

### E. Plaintiff's Claim for Actual Damages

Defendants next argue that they are entitled to summary judgment on plaintiff's claim for actual damages because she cannot prove that she suffered damages [Doc. 19]. Particularly, defendants state that plaintiff's complaint claims that she suffered damages from having to pay a higher interest rate on her home loan, and that this claim has proven to be without merit [*Id.*].  In response, plaintiff argues that she has presented sufficient evidence of her damages which include a higher interest rate on her home loan, extra closing costs, upfront mortgage payments, a credit monitoring service, and costs of certified mail [Doc. 30].  Defendants' reply argues that evidence of plaintiff's damages is inadmissible [Docs. 34, 35].

In addressing defendants' motion to strike plaintiff's Exhibit A to her declaration, the Court previously found that it would not disregard the exhibit because plaintiff's violation of the discovery rules were harmless.  *See supra* Part.II.C.  As such, the Court finds that plaintiff has produced sufficient evidence that could lead a rational trier of fact to find that she has suffered actual damages.  Accordingly, defendants' motion for summary judgment on plaintiff's claim for actual damages will be denied.

---

[13] Because the Court finds that plaintiff's claims against Encore and MCM under the FDCPA are time-barred, the Court does not reach the issue of piercing the corporate veil to hold defendant Encore as a debt collector.

## F.     Plaintiff's Claim for Punitive Damages

Finally, defendants have moved for summary judgment on plaintiff's claim for punitive damages arguing that plaintiff has failed to show that defendants acted intentionally, recklessly, maliciously, or fraudulently [Doc. 19].  In response, plaintiff argues that defendants' actions in taking a judgment against her and their subsequent failure to correct the entry of judgment were reckless and represented a callous disregard for plaintiff's rights [Doc. 30].

Under Tennessee law, punitive damages are restricted "to cases involving only the most egregious of wrongs."  *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992).  "[A] court may . . . award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly."  *Id*.  "A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances."  *Id.* (citing Tenn. Code Ann. § 39-11-302(c)).  Furthermore, a plaintiff seeking to recover punitive damages "must prove the defendant's intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence."  *Id*.

Here, plaintiff alleges that defendants acted recklessly; however, plaintiff has failed to show by clear and convincing evidence that defendants acted with such conscious disregard as to warrant an award of punitive damages.  Even viewing the facts in the light most favorable to plaintiff, as the Court is required to do on a motion for

summary judgment, the Court does not find the existence of a genuine dispute as to any material fact showing that defendants acted intentionally, fraudulently, maliciously, or recklessly. Rather, the evidence shows that the initial entry of the default judgment against plaintiff was inadvertent, [Doc. 35], and that plaintiff does not know for sure who reported her judgment to the consumer reporting agencies [Doc. 32-1 pp. 57–58]. As such, the Court finds that defendants' motion for summary judgment as to plaintiff's claim for punitive damages will be granted.

## V.    Conclusion

For the reasons stated above, the Court will **GRANT** defendants' motion to strike portions of plaintiff's declaration [Doc. 34] in part, and **DENY** it in part, to the extent explained in the memorandum opinion. The Court will also **GRANT** Defendants' Motion for Summary Judgment [Doc. 8] in part, and **DENY** it in part. Plaintiff's claims against all defendants under the FCRA, Tennessee state law, and for punitive damages will be dismissed. Additionally, plaintiff's claims against defendants Encore and MCM under the FDCPA will be dismissed.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE